Filed 7/8/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AZIZ DAMAK,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF<br>ORANGE COUNTY,<br><br>    Respondent;<br><br>SANGITA KHANNA et al.,<br><br>    Real Parties in Interest. | G065583<br><br>(Super. Ct. No. 30-2023-<br> 01355579)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Richard Y. Lee, Judge. Petition granted in part and denied in part.

Aziz Damak, in pro. per., for Petitioner.

Law Offices of Norman A. Filer and Hitendra Bhakta for Real Parties in Interest.

*      *      *

After failing to receive any response from Satraj Hospitality LLC, Sangita Khanna, and Sanjeev Khanna (defendants) to a variety of propounded discovery, or any communication from their counsel concerning it, self-represented Aziz Damak filed motions to compel. In addition to other relief, each of the motions requested the trial court issue monetary sanctions of at least $1,000 pursuant to method-specific sanction provisions of the Civil Discovery Act (Code Civ. Proc., §§ 2016.010 et seq.; Discovery Act.).[1] Although the court granted all the motions to compel and the nonmonetary relief requested, it denied the requests for monetary sanctions because Damak did not show he incurred any actual expenses as a result of defendants' failure to respond to the discovery.

Through this mandate proceeding, Damak challenges the denial of monetary sanctions, asserting the denial is contrary to the applicable statutes which make monetary sanctions mandatory. In addition, he contends it runs counter to the deterrent purpose of the statutory provisions and will serve to encourage discovery abuse of self-represented parties by those who are represented by counsel. He requests we either direct the trial court to impose monetary sanctions in an amount to be determined or impose the sanctions ourselves.

As part of a legislatively established comprehensive system of discovery procedures, the applicable statutes control the types of sanctions available and the circumstances under which they may be granted.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

Longstanding statutory language and relevant case law lead us to conclude it was proper for the trial court to focus, in part, on whether Damak incurred expenses due to defendants' lack of response. However, the record is devoid of any consideration afforded to a more recently enacted Discovery Act sanctions provision that is an integral component of the statutory scheme and applies notwithstanding any other law. Specifically, section 2023.050, which relates to document production requests, makes a $1,000 sanction against a party and/or attorney mandatory under certain circumstances irrespective of any resulting expenses incurred by the other side. Because the trial court failed to consider whether the requisite factual findings triggering such sanctions could properly be made, the court erred in denying outright the requests for monetary sanctions. Accordingly, we grant Damak's petition for writ of mandate, in part, and direct the court to reconsider the monetary sanctions requests in accordance with section 2023.050 and this opinion, including our discussion of civility in the legal profession.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

#### THE PLEADINGS

In October 2023, Damak sued defendants concerning employment related matters, including wage and hour, meal and rest period, retaliation, and wrongful discharge claims.[2] At the time he filed the complaint, he requested and obtained a fee waiver. He also obtained additional fee waivers throughout the course of the proceedings below.

The complaint alleged defendants own, manage, and operate a motel named Cozy Inn in the City of Costa Mesa. Defendants hired Damak as

---

[2] On our own motion, we take judicial notice of the complaint and other documents filed in the trial court. (Evid. Code, §§ 452, subd. (d)(1), 459.)

a receptionist for the motel in May 2023. His regular work schedule was four days per week, but he allegedly "worked and was on duty every weekend for more than 44 hours consecutively, and [he] worked more than 68 hours per any given week." The complaint further alleged he "did not receive pay stubs, was not payed [*sic*] hourly, was not payed [*sic*] overtime, was not payed [*sic*] all of his wages, and was not provided with proper meal and rest breaks." While employed, federal investigators conducting a labor related investigation into defendants contacted Damak. He "complied with the federal investigation, . . . disclos[ing] to the federal investigator . . . damning information about [d]efendants' labor violations." Defendants were aware of Damak's cooperation with the federal investigation and allegedly terminated him because of it.

In December 2023, defendants, through their attorney, Hitendra Bhakta, filed an answer to the complaint which generally denied all allegations and set forth various affirmative defenses. During a case management conference a few weeks later, at which Bhakta appeared, the court set the matter for a July 2025 jury trial.

II.

DISCOVERY

Roughly six months later, toward the end of July 2024, Damak propounded discovery on defendants. The discovery as to each defendant included two sets of form interrogatories, one set of special interrogatories, one set of requests for admissions, and one set of document production requests. Damak called Bhakta's office the following day to make sure they received the documents. The receptionist confirmed receipt and said they would reiterate the information to Bhakta.

4

Thirty days passed, and having failed to receive any response to the discovery or communication about it, Damak called Bhakta's office. The receptionist conveyed Bhakta was in a meeting, but they would relay Damak's discovery inquiry to Bhakta. Damak provided his phone number and the receptionist said they would get back to him that evening.

An additional five days passed without any communication from the defense side about the outstanding discovery. Seeking answers about the "lack of responsiveness and [defendants'] apparent refusal to comply with [the] discovery requests," Damak sent an email addressed to Bhakta which indicated Damak would pursue a motion for sanctions if he did not receive a response within 21 days. A few days later, at the end of August 2024, Damak again called Bhakta's office and spoke with the receptionist. The receptionist confirmed receipt of the 21-day notice and said they had relayed Damak's prior discovery related inquiries to Bhakta.

III.

DISCOVERY MOTIONS AND REQUESTS FOR SANCTIONS

By the end of November 2024, Damak still had not received any communication about the discovery. He filed motions to compel as to each defendant and each type of discovery. In addition to seeking an order directing defendants to comply with their discovery obligations, Damak asked the trial court to deem admitted the matters in the requests for admissions. And in each of the fifteen motions, he requested the court issue monetary sanctions of "at least $1,000." Regarding the latter, he cited statutory provisions concerning failure to timely respond to the various types of discovery and noted the statutes mandate the court impose a monetary sanction for such a failure. He elaborated: "I base my request for the imposition of sanctions, on the basis of the failure to produce, purposefully

5

continuing to fail to produce, and refusing to communicate, respond, or answer to [four-]month old requests for [discovery], after over [six] attempts of communications, as well as on the fact that it took me weeks to be able to research on my own and prepare and write and assemble this motion, and the fact that [I] was compelled into bringing this motion, just so [I] can obtain any form of discovery, and lastly, to impress reverence of the law, on an [a]ttorney and a [d]efendant, who do know or at the very least should know, to comply with basic discovery requests and not play evasive non-responsive games, or violate the [D]iscovery [A]ct, and engage in the misuse of the discovery process, repeatedly."

Defendants did not file anything in response to the motions to compel. And in the approximately five-and-a-half-month period before the hearing on the motions to compel, defendants did not respond to the outstanding discovery. Similarly, neither Bhakta nor anyone from the defense side communicated with Damak about it during that time.

IV.

HEARINGS ON DISCOVERY MOTIONS AND SANCTIONS REQUESTS

In May 2025, the trial court held two hearings concerning the motions to compel. Damak appeared at both, while Bhakta only appeared at the first. After the hearings, which were not transcribed, the court adopted its tentative decisions granting all Damak's motions to compel as requested with the exception of monetary sanctions. The court recognized the applicable statutes made such sanctions mandatory but explained they were limited in amount to "'reasonable expenses actually incurred'" by the moving party. Because Damak was self-represented, had a fee waiver, and did not state he incurred any expenses in bringing the motions to compel, the court concluded it could not award any sanctions and denied that aspect of the motions.

6

V.

Damak filed the present writ petition, raising concerns about the trial court's denial of his monetary sanctions requests. This court provided defendants with an opportunity to file an informal response to the petition, but they did not file one. After this court issued an order to show cause and stayed further trial court proceedings, defendants, through Bhakta, filed a two-and-a-half-page formal return to the petition.

DISCUSSION

Damak challenges the trial court's denial of monetary sanctions, contending the court was required to impose some amount even if nominal. He argues the applicable statutes make the imposition of monetary sanctions mandatory and not imposing them defeats the deterrent purpose of discovery sanctions. The language of one of the applicable statutes, as interpreted by case law construing it and identical language in other statutes, leads us to conclude the court, in part, properly focused on the lack of any expenses incurred by Damak in bringing the motions to compel. However, another applicable statute requires the imposition of monetary sanctions irrespective of expenses incurred if the court makes certain findings. Because the trial court made no mention of the latter statute, meaning it failed to even consider whether one or more of the relevant findings could be made under the circumstances, the court's denial of monetary sanctions was an abuse of discretion.

I.

STATUTORY AUTHORITY FOR DISCOVERY RELATED MONETARY SANCTIONS

"The . . . Discovery Act sets out six methods by which litigants can obtain pretrial disclosure of relevant information: (a) depositions; (b)

interrogatories; (c) inspections of documents, things, and places; (d) physical and mental examinations; (e) requests for admissions; and (f) exchanges of expert trial witness information. [Citation.] The procedures relevant to discovery under each of these six methods are outlined in different chapters of the Act." (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 61 (*City of Los Angeles*).) For example, Chapter 13 governs interrogatories (§§ 2030.010–2030.410) and Chapter 16 concerns requests for admission (§§ 2033.010–2033.420).

"Each chapter authorizes sanctions for certain conduct constituting misuse or abuse of different discovery methods." (*City of Los Angeles, supra*, 17 Cal.5th at p. 61.) Relevant here, section 2030.290 states "[t]he court shall impose a monetary sanction under Chapter 7 (commencing with [s]ection 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a response to interrogatories, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2030.290, subd. (c).) Section 2031.300, subdivision (c) which relates to document production demands, contains identical language and the same reference to Chapter 7 of the Discovery Act (§§ 2023.010–2023.050; Chapter 7). Similarly, section 2033.280 provides "[i]t is mandatory that the court impose a monetary sanction under Chapter 7 (commencing with [s]ection 2023.010) on the party or attorney, or both, whose failure to serve a timely response to requests for admission necessitated [a motion to compel]." (§ 2033.280, subd. (c).)

Chapter 7 begins by listing examples of "[m]isuses of the discovery process" (§ 2023.010) and continues by discussing sanctions. More specifically, as relevant here, section 2023.030 states a court "may impose a

monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both[,] pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (§ 2023.030, subd. (a).) Notwithstanding the use of the word "may," the same section then clarifies that "[i]f a monetary sanction is authorized by any provision of [the Discovery Act], the court *shall* impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a), italics added.)

Also contained in Chapter 7 is section 2023.050, which took effect in January 2020 and was amended one time thereafter. (Stats. 2019, ch. 836, § 2; Stats. 2023, ch. 284, § 3.) As of January 1, 2024, the effective date of the amendment, it provides that "[n]otwithstanding any other law, and in addition to any other sanctions imposed pursuant to [Chapter 7], a court shall impose a one-thousand-dollar ($1,000) sanction, payable to the requesting party, upon a party, person, or attorney if, upon reviewing a request for a sanction made pursuant to [s]ection 2023.040, the court finds any [one of three specified circumstances true]."[3] (§ 2023.050, subd. (a).) Among the circumstances triggering the $1,000 sanction are (1) the party, person, or attorney did not respond in good faith to a request for the production of documents or an inspection demand made pursuant to specified sections, or (2) "[t]he party, person, or attorney failed to confer . . . with the party or attorney requesting the documents in a reasonable and good faith attempt to resolve informally any dispute concerning the request." (*Id.*, subd.

_____

[3] As originally enacted, the applicable sanction was $250. (Stats. 2019, ch. 836, § 2.) The Legislature subsequently raised that amount to the present $1,000. (Stats. 2023, ch. 284, § 3.)

9

(a)(1) & (3).) A person may be excused from the sanction "if the court makes written findings that [they] acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (*Id.*, subd. (c).) If an attorney is sanctioned, the court may exercise discretion to require the attorney to report the sanction to the State Bar of California within 30 days of imposition. (*Id.*, subd. (b).)

## II.

### RELEVANT CASE LAW

"'One of the principal purposes of the [Discovery Act]' . . . [is] "'to enable a party to obtain evidence in the control of his adversary in order to further the efficient, economical disposition of cases according to right and justice *on the merits*." (*City of Los Angeles, supra*, 17 Cal.5th at p. 73.) Consistent with that purpose, courts have reiterated for decades that "discovery sanctions are not to be used 'to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits.'" (*Id.* at p. 63, citing *Crummer v. Beeler* (1960) 185 Cal.App.2d 851, 858; accord *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992; *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545.) Rather, they are one of the tools courts may use to respond to discovery abuses "to ensure that civil discovery can serve its central truth-seeking function." (*City of Los Angeles*, at p. 73.) Also well-established is that "a more severe sanction is disfavored if a lesser sanction is available. [Citation.] This means that a court ordinarily must consider monetary sanctions . . . before it proceeds to consider whether other nonmonetary sanctions are appropriate to address the misconduct at issue." (*Id.* at p. 63.)

Over the decades, courts have from time to time been faced with questions regarding the permissible scope of monetary sanctions in the

10

discovery context. Historically, this meant looking at the language of Chapter 7's section 2023.030 which specifies such sanctions may consist of payment of "the reasonable expenses, including attorney's fees, incurred by anyone as a result of [the offending] conduct." (*Id.*, subd. (a).)

In *Argaman v. Rutan* (1999) 73 Cal.App.4th 1173 (*Argaman*), for example, the question presented was whether an attorney who litigates in propria persona may be awarded monetary sanctions under section 2023.030 "based on compensation for the time and effort expended as a result of a misuse of the discovery process." (*Argaman*, at p. 1175.) The appellate court concluded such an award was not permissible. (*Ibid.*) In doing so, it relied on the Supreme Court's decision in *Trope v. Katz* (1995) 11 Cal.4th 274 (*Trope*), which interpreted Civil Code section 1717, a statute concerning attorney fee awards to prevailing parties in certain contract related actions, and which evaluated a self-represented attorney litigant's entitlement to such an award.

*Trope* looked to the language of Civil Code section 1717, which the court described as "appl[ying] only to contracts specifically providing that attorney fees 'which are *incurred* to enforce that contract' shall be awarded to one of the parties or to the prevailing party." (*Trope, supra*, 11 Cal.4th at p. 280.) It explained that "[t]o 'incur' a fee, of course, is to 'become liable' for it [citation], i.e., to become obligated to *pay* it." (*Ibid.*) The court reasoned that under the statute's plain meaning, "an attorney litigating in propria persona cannot be said to 'incur' compensation for his time and his lost business opportunities," and, therefore, cannot be awarded attorney fees under the statute. (*Ibid.*) In addition to describing such a conclusion as being supported by prior case law and legislative history (*id.* at pp. 280–283), the court said its interpretation was consistent with the statute's purpose which was "to prevent the oppressive use of one-sided attorney fee provisions" (*id.* at p.

11

285). It explained that interpreting the statute to allow an attorney litigating in propria persona to recover fees would render every contract one-sided because the statute clearly precluded a self-represented litigant of any other profession from recovering fees based on time and effort spent or professional business opportunities foregone. (*Id.* at pp. 285–286.) "[I]n effect creat[ing] two separate classes of pro se litigants—those who are attorneys and those who are not—and grant[ing] different rights and remedies to each," was unsupported by the statutory language, "the legislative policy underlying it, or . . . fairness and logic." (*Id.* at p. 277.)

*Argaman* found *Trope*'s rationale equally applicable to monetary sanctions in the discovery abuse context. (*Argaman, supra*, 73 Cal.App.4th at p. 1179.) Like under Civil Code section 1717, "the attorney's fees which are recoverable are those which are incurred." (*Argaman*, at p. 1179.) But, "a pro se attorney litigant does not incur attorney's fees[] because the attorney litigant is not liable to pay consideration for the legal representation." (*Ibid*.) The court further explained that even if the value of a self-represented attorney's time and effort were considered "a reasonable expense," it could not be factored into a monetary sanctions award in the discovery context because no expense would have been incurred "and the statute compensates only those reasonable expenses which have been incurred." (*Id.* at pp. 1179–1180.) Still available in situations involving self-represented litigants, however, are monetary sanctions for reasonable expenses "actually incurred," as well as nonmonetary sanctions for disobeying a court order compelling discovery. (*Id.* at p. 1180.)

The *Argaman* court expressly disagreed with *Abandonato v. Coldren* (1995) 41 Cal.App.4th 264 (*Abandonato*), a case which considered monetary sanction awards to pro se attorney litigants pursuant to section

128.5 based on another litigant's bad faith actions which are frivolous or solely intended to cause unnecessary delay. In concluding such litigants could be awarded attorney fees as sanctions under that statute, which uses language identical to section 2023.030's "reasonable expenses incurred," *Abandonato* found *Trope* distinguishable on multiple grounds. (*Abandonato*, at pp. 268–269.)

A decade after *Argaman* was decided, the Supreme Court overruled *Abandonato* in a case concerning the scope of monetary sanctions available under section 128.7. (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 520.) Section 128.7 allows a court to award a party that prevails on a motion brought under the section "the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." (§ 128.7, subd. (c)(1).) *Musaelian* likened the "incurred" language to that it considered in *Trope* and concluded the same outcome should result—a self-represented litigant may not recover attorney fees or be compensated for time lost from other employment as part of a section 128.7 sanction. (*Musaelian*, at pp. 517, 520.) In doing so, the high court rejected an argument that such an interpretation was inconsistent with intervening decisions in which it found permissible an award of attorney fees under Civil Code section 1717 to in-house counsel and an award of attorney fees under section 425.16 to a party represented by an attorney under a contingency fee arrangement. (*Musaelian*, at p. 520, discussing *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, and *Ketchum v. Moses* (2001) 24 Cal.4th 1122.) It explained those cases presented special situations: "'[I]n-house attorneys, like private counsel but unlike pro se litigants, do not represent their own personal interests and are not seeking remuneration simply for lost opportunity costs that could not be recouped by a nonlawyer.' [Citation.] Similarly, privately or publicly funded legal services

13

providers representing indigent parties, or attorneys litigating on a contingency fee basis, are not representing their own personal interests or seeking remuneration for lost opportunities." (*Musaelian*, at p. 520.) Attorney fees were "'incurred'" in those situations because of the existence of an attorney-client relationship and attorney work performed on the client's behalf.[4] (*Musaelian*, at p. 520.) The court emphasized those cases "have no application when . . . a party is litigating his or her own case." (*Ibid*.)

### III.

### ANALYSIS

*A. Discovery Related Monetary Sanctions*

Damak based his motions to compel, including the requests for sanctions, on sections of the Discovery Act which provide what the Supreme Court has referred to as "method-specific sanctions provisions." (*City of Los Angeles, supra*, 17 Cal.5th at p. 68.) They include sections 2030.290 (interrogatories), 2031.300 (document production requests), and 2033.280 (requests for admission). As previously described, and subject to exceptions not applicable here, each of those sections makes the imposition of monetary sanctions mandatory and each directs they be imposed pursuant to Chapter 7. (§§ 2030.290, subd. (c), 2031.300, subd. (c), 2033.280, subd. (c).)

Section 2023.030 is part of Chapter 7 and provides for a monetary sanction order requiring the offending party, and/or any attorney advising the offending conduct, to "pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of [the] conduct." (§ 2023.030, subd. (a).)

---

[4] Consistent with this reasoning, and prior to *Musaelian*, another panel of this court concluded discovery related monetary sanctions may include reasonable attorney fees for legal services rendered to a party by pro bono legal counsel. (*Do v. Superior Court* (2003) 109 Cal.App.4th 1210, 1218.)

However, consistent with *Trope*, *Musaelian*, and *Argaman*, that section does not permit a self-represented litigant like Damak to recover as monetary sanctions anything other than amounts actually expended as a result of the offending conduct. (See *Kravitz v. Superior Court* (2001) 91 Cal.App.4th 1015, 1021 (*Kravitz*) [discovery monetary sanctions may not include award of attorney fees to self-represented litigant but may include legitimate identified costs such as technology assisted legal research, photocopying, and transportation to court].) Remuneration for time spent obtaining the orders compelling defendants' compliance and to account for foregone opportunities is not recoverable.

*Appleton v. Superior Court* (1988) 206 Cal.App.3d 632, cited by Damak, does not compel a different result. There, the trial court denied discovery related monetary sanctions to a party represented by an attorney believing it had discretion to do so even if it granted motions to compel for failure to respond to discovery. (*Id.* at p. 635.) The court of appeal, based on the applicable statutory language, determined the court did not have such discretion because the monetary sanctions were mandatory. (*Id.* at pp. 635–636.) It remanded the case to the trial court to determine "the appropriate amount." (*Id.* at p. 636.) Simply put, *Appleton* does not speak to the appropriate amount of sanctions in any situation, let alone in circumstances

15

like those before us in which the party seeking sanctions has been self-represented at all relevant times.[5]

We acknowledge the seeming injustice and Damak's frustration with what he describes as a rule which "effectively grants represented parties a green light to ignore discovery obligations when facing a self-represented opponent." As stated by one court that explored this very issue more than two decades ago and described the result as "wholly inadequate" (*Kravitz, supra*, 91 Cal.App.4th at p. 1016): "When one party attempts to use the discovery process as a financial bludgeon or an obfuscation tool, the most readily identifiable cost to the other party is the attorney's fees incurred in response to the abuser's acts or omissions. Where no fees are incurred, the abuser gets one free bite—because issue, evidence, and terminating sanctions must all be preceded by the abuser's disobedience of an order compelling him to do that which he should have done in the first instance." (*Id.* at p. 1021.) The concern is heightened in today's digital litigation world where photocopying, postage, and similar tangible expenses are nonextant. Notably, that same court suggested the "Legislature . . . consider special provisions for the situation that arises in . . . case[s] such as th[ese]." (*Id.* at p. 1021.)

Although the Legislature has not taken steps to specifically address the plight of self-represented litigants faced with discovery abuse, its somewhat recent addition of section 2023.050 to Chapter 7 moves some

---

[5] Damak also argues the trial court's rulings "raise broader concerns of due process and equal protection." However, he does not develop the argument or provide legal authority to support it. Accordingly, he has forfeited those issues. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 ["'When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived"'"].)

monetary sanctions away from being purely compensatory in nature. Notwithstanding any other law, and in addition to any other imposed sanction, that section makes a $1,000 sanction against a party and/or attorney mandatory when, inter alia, a court finds the party or attorney "did not respond in good faith to a request for the production of documents." (§ 2023.050, subd. (a)(1).) Another circumstance giving rise to the same mandatory sanction is when a party or attorney "fail[s] to confer" with the document requesting party or attorney "in a reasonable and good faith attempt to resolve informally any dispute concerning the request." (*Id.*, subd. (a)(3).) With the sanctions expressly and exclusively linked to the sanctioned party's or attorney's behavior, rather than steps taken by the other side in enforcing compliance with discovery obligations, section 2023.050 is focused on deterring the abusive behavior irrespective of whether, and to what extent, it results in the incurring of costs by the other side. This is confirmed by legislative history which indicates the purpose of the statute is to "provide[] a stronger . . . hammer on discovery abuse," resulting in "a more definitive deterrent." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 17 (2019–2020 Reg. Sess.) as amended Sept. 3, 2019, p. 7.)

Damak moved for sanctions regarding document production requests pursuant to section 2031.300, which in turn requires the imposition of monetary sanctions pursuant to Chapter 7, including section 2023.050. But

17

the trial court made no mention of the latter.[6] The court's failure to consider whether findings pursuant to section 2023.050 were appropriate under the circumstances, thereby necessitating sanctions against defendants, their counsel, or both, constitutes an abuse of discretion. (See *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725 [abuse of discretion shown when trial court applies wrong legal standard]; *Argaman, supra,* 73 Cal.App.4th at p. 1176 [propriety of discovery sanctions reviewed for abuse of discretion].) Because such sanctions require one or more predicate factual findings by the trial court, we must remand the matter to allow the court to consider in the first instance whether any such findings are proper. Notably, there is nothing in the record before us indicating defendants or their counsel "respond[ed] in good faith to [Damak's] request[s] for the production of documents" or conferred with Damak regarding them. (§ 2023.050, subd. (a)(1) & (3).)

B. *The Dignity, Courtesy, and Integrity Officers of the Court Owe Self-Represented Litigants*

It would be remiss of us not to mention civility in this case. This court and others have had the unfortunate, but necessary, role of "deplor[ing] the lack of civility that has flourished in the legal profession in recent

---

[6] In response to a question at oral argument, defendants' counsel unequivocally stated the trial court addressed section 2023.050. Nothing in the record suggests the court even considered the statute, let alone addressed it. An attorney is an officer of the court and owes the court a duty of candor. Among the obligations encompassed by that duty are to never knowingly make a false statement of fact or law (see Rules Prof. Conduct, rule 3.3(a)(1)), and to never seek to mislead any judicial officer by a false statement of fact or law (see Bus. & Prof. Code, § 6068, subd. (d)). Defendants' counsel would be well advised to keep those matters at the forefront of their mind going forward.

decades." (*Masimo Corp. v. The Vanderpool Law Firm, Inc.* (2024) 101 Cal.App.5th 902, 910 (*Masimo Corp.*).) Most commonly, it has come in response to the way lawyers have treated each other, and on occasion in response to the way lawyers have treated the courts. (See, e.g., *Young v. Hartford* (2024) 106 Cal.App.5th 730, 741–742; *Masimo Corp.*, at p. 911; *Snoeck v. ExakTime Innovations, Inc.* (2023) 96 Cal.App.5th 908, 922–925; *Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 747–748 (*Karton*); *Lasalle v. Vogel* (2019) 36 Cal.App.5th 127, 140–141 (*Lasalle*); *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1534–1537.)

But civility is not just about lawyer-to-lawyer or lawyer-to-court relations. It "is not about etiquette" and eliminating "bad manners." (*Masimo Corp., supra*, 101 Cal.App.5th at p. 911.) Rather, it "is an ethical component of professionalism." (*Karton, supra*, 61 Cal.App.5th at p. 747.) Indeed, since 2014, new attorneys admitted to the California State Bar must vow, as part of their oath, "to conduct [themselves] *at all times* with dignity, courtesy, and integrity." (Cal. Rules of Court, rule 9.7(a), italics added; see also *Lasalle, supra*, 36 Cal.App.5th at p. 134.) And, starting this year, *every* active licensed attorney must reaffirm their commitment to that civility oath on an annual basis to maintain their active status. (Cal. Rules of Court, rule 9.7(b) & (c)(2).)

In the litigation realm, when a party is not represented by counsel, civility means treating that self-represented party with the same dignity, courtesy, and integrity due to another lawyer and the court. It also means, among other things, abiding by the Legislature's directive to "cooperate in bringing the action to trial." (§ 583.130.)

Here, Damak propounded various types of discovery on each defendant by serving it on the attorney who represented all of them, Bhakta.

19

He confirmed with the receptionist at Bhakta's office that all documents were received and the information would be communicated to Bhakta. During the more than 10 months that followed before the hearing on the motions to compel took place, Damak did not receive a single communication from Bhakta. No email, no phone call, nothing, even though the receptionist at Bhakta's office confirmed Bhakta was made aware of the discovery and Damak's multiple attempts to follow up about it.[7] Stonewalling the other side in such a manner, irrespective of any underlying intent or lack thereof, falls far short of conducting oneself with dignity, courtesy, and integrity. It also hinders bringing the action to trial, which in turn may negatively impact the opposing litigant's obligations, including bringing an action to trial in a timely manner. (See §§ 583.310, 583.360 [mandatory dismissal for failure to bring action to trial within 5 years of commencement].) Civility is not always about what is said or how it is conveyed; it sometimes is about what is not said or done.

## DISPOSITION

The petition is granted in part and denied in part. Let a peremptory writ of mandate issue directing the trial court to (1) vacate the monetary sanctions related portion of the challenged May 22, 2025 order, and (2) reconsider, consistent with applicable law and this opinion, whether monetary sanctions are appropriate under the circumstances. In all other

_____

[7] Although defendants did not dispute, in the trial court or written appellate briefing, Damak's assertions and evidence of Bhakta's lack of communication, Bhakta stated at oral argument that Damak was "incorrect." After describing alleged communications between his office and Damak concerning matters which appear to be unrelated to this case, this court inquired whether evidence of such communications is in the record. Bhakta answered affirmatively. But there is no such evidence in the record; defendants did not file anything in opposition to Damak's motions to compel.

20

respects, the petition is denied. The stay previously issued by this court will dissolve upon issuance of the remittitur. (Cal. Rules of Court, rules 8.490(d), 8.272.) Damak is entitled to costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

DELANEY, J.

WE CONCUR:

MOTOIKE, P. J.

MOORE, J.